UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DR. CHINYELU NWOBU, | ) | |
| | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CHILDREN'S HEALTHCARE OF | ) | |
| ATLANTA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Dr. Chinyelu Nwobu ("Dr. Nwobu" or "Plaintiff") respectfully submits this Complaint for Damages and Equitable Relief:

## INTRODUCTION

1.     Dr. Nwobu is an African American female who was formerly employed by Children's Healthcare of Atlanta, Inc. ("CHOA" or "Defendant") as a Pediatric Hospitalist.  Despite satisfactory performance in her role, Dr. Nwobu suffered race and pregnancy discrimination and retaliation.

2.     Plaintiff files this Complaint for declaratory, injunctive, and monetary relief against CHOA for retaliation in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, and for damages and litigation expenses under Georgia law, after

Defendant refused to rehire her after she asserted claims of race and gender discrimination under the above-referenced statutes and resolved those claims.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action pursuant to 42 U.S.C. § 1981, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4.      The unlawful violations of Plaintiff's civil rights were committed within the Northern District of Georgia.  Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as every act of which Plaintiff complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

## ADMINISTRATIVE EXHAUSTION

5.      Dr. Nwobu has satisfied all administrative prerequisites to perfect her claims of discrimination and retaliation under Title VII. Specifically, she has timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race and sex discrimination and retaliation, and received a Notice of Right to Sue Letter for her claims under Title VII of the Civil Rights Act of 1964.

## PARTIES

6.     Plaintiff Dr. Nwobu is now and was at all times relevant to this action, a citizen of the United States entitled to bring actions of this type and nature. Plaintiff is now and was at all times relevant to this action a resident of the state of Georgia.

7.     Defendant CHOA is a Georgia Corporation.  Its principal place of business is located at 1575 Northeast Expressway, Atlanta, GA, 30329-2303. Its registered agent for service of process is CSC of Cobb County, Inc.  Process can be served at 192 Anderson Street, N.E., Suite 125, Marietta, GA, 30060.

## STATEMENT OF FACTS

8.     Dr. Nwobu, an African American female, began working at CHOA as a pediatric hospitalist in August 2014, working primarily in pediatric neurology.

9.     In 2019, Dr. Nwobu became pregnant. Upon announcing her pregnancy, members of the neurology department working at CHOA made several derogatory comments to her.   Dr. Nwobu complained of race and gender harassment to Crystal Shah, the Scottish Rite Pediatric and Adolescent Consultants ("SRPAC") Practice Manager at that time, and verbally expressed her intention to resign as a result of the harassment.

10.   Within the next week, Dr. Nwobu reflected upon her decision and decided to retract her resignation because of her pregnancy and imminent childbirth.   Dr. Deborah Andresen, the Director of SRPAC, approved her retraction.

11.   Nevertheless, Crystal Shah contacted Dr. Nwobu and indicated her expectation that Dr. Nwobu move forward with her resignation. Initially, CHOA claimed Dr. Nwobu "seemed unhappy," and when Dr. Nwobu denied this, CHOA invented various baseless performance issues to compel Dr. Nwobu's resignation.

12.   CHOA had previously accepted retractions of resignations from other similarly situated physicians, including a white male named Dr. Jeffrey Klick.

13.   On August 1, 2019, Dr. Nwobu, through counsel, sent CHOA a notice of legal claims for race and gender discrimination based on her pregnancy.

14.   The parties resolved those claims through a settlement agreement and release covering any causes of action accruing on or before November 1, 2019, when the document was executed.

15.   The settlement and release was executed on November 1, 2019, but the parties negotiated that Dr. Nwobu would continue working until March 1, 2020, with her benefits continuing until March 31, 2020.

16.     To cover the release period from November 2, 2019, through March 1, 2020, Defendant included an unlawful provision in the settlement agreement obligating Dr. Nwobu to release future claims within five days of Dr. Nwobu's last day of work on March 1, 2020, by executing a second release after that date.

17.     The U.S. Supreme Court made clear in *Alexander v. Gardner-Denver Co*., 415 U.S. 36, 51 (1974) that, "there can be no prospective waiver of an employee's rights under Title VII."

18.     Dr. Nwobu released her race and gender discrimination claims through November 1, 2019, based on promised employment through March 1, 2020 and benefits through March 31, 2020.

19.     There was no additional consideration discussed for a second release through March 1, 2020 for claims accruing after Dr. Nwobu executed the first release.

20.     There was no provision in the settlement agreement prohibiting Dr. Nwobu from reapplying for employment or indicating she was ineligible for rehire.

21.     In or about January 2020, Dr. Nwobu began applying for new jobs, including jobs at CHOA based on the absence of any provision prohibiting her rehire in her settlement agreement.

22.     In January 2020, Dr. Nwobu began expressing interest in working as-needed hourly shifts *pro re nata* ("PRN") at Egleston from March 2020.   On January 15, 2020, Melynda Baron (Business Operations Coordinator for Egleston) emailed Dr. Nwobu to inform her that she could work on March 7-8, 2020. When Dr. Nwobu confirmed she could work, she never heard anything further from Defendant.

23.     Shortly thereafter, Dr. Nwobu received a call from Crystal Shah, who told her that she would have to reapply to the PRN pool to be considered.

24.     Several other physicians have left employment at CHOA and Egleston in the past and have been permitted to resume shifts in the PRN pool without having to reapply.

25.     On January 30, 2020, Dr. Nwobu applied for CHOA's Urgent Care Physician positions (various locations, but with a primary site in Duluth, GA).   On February 3, 2020, she spoke with Pryia Rice, a physician recruiter, with whom Dr. Nwobu had a good rapport from past recruitment. Ms. Rice stated that the Duluth office had no openings but she would speak with Dr. Usha Sathian, CHOA's Medical Director of the Outpatient Urgent Care Centers, to see if it would be possible to create a position at either the Duluth or Alpharetta location.

26.    Ms. Rice promised to respond to Dr. Nwobu by Friday, February 7, 2020, but never did so.

27.    Dr. Nwobu called Ms. Rice on or about February 10, 2020, at which time she left a message. Ms. Rice responded on or about February 12, 2020, relaying the following: "In speaking with Dr. Usha Sathian, she is not interested in moving forward with the interview process at this time."

28.    On or about February 14, 2020, Dr. Nwobu responded that she would be open to working at another Urgent Care location.

29.    On or about February 25, 2020, Dr. Nwobu applied to the Kennesaw Town Center Urgent Care location.

30.    Notably, between January and March 26, 2020, CHOA advertised six (6) openings for Urgent Care Physicians throughout Atlanta.

31.    The time period around March 26, 2020 was during the initial stages of the COVID-19 pandemic, when physicians were highly sought after to treat sick and ill infants, children, and adolescents who contracted coronavirus.

32.    Dr. Nwobu began receiving confusing messages to complete her applications for employment and New Hire information on or around March 10 and 13, 2020.

33.    On or about March 16, 2020, after Dr. Nwobu attempted several times to obtain clarity from Ms. Rice, Ms. Rice responded, "In speaking with Dr. Sathian, she is not interested in moving forward with the interview process at this time."

34.    In its Position Statement to the U.S. Equal Employment Opportunity Commission in response to Dr. Nwobu's Charge of Discrimination, Defendant contended that one of the reasons it refused to rehire Dr. Nwobu was her refusal to execute the unlawful future release of claims contemplated by the November 1, 2019 settlement agreement.

35.    In its position statement, Defendant also identified new alleged performance issues that were never raised to Dr. Nwobu during her employment or made part of any disciplinary or adverse action.

## COUNT I
### Retaliatory Refusal to Hire in Violation of 42 U.S.C.§ 1981

36.    Plaintiff hereby incorporates each and every preceding paragraph of the Complaint.

37.    Plaintiff and Defendant were parties to an employment agreement under which, *inter alia*, Plaintiff worked for Defendant and Plaintiff was compensated for her work.

38.    Plaintiff performed her contractual obligations.

39.     Plaintiff was an employee and applicant who engaged in protected activity under 42 U.S.C. § 1981 by objecting to and complaining about race discrimination prohibited by 42 U.S.C. § 1981.

40.     Beginning in January 2020, following Dr. Nwobu's complaints about race discrimination, Defendant refused to rehire her.

41.     As part of an attempted resolution of prior race discrimination complaints, Defendant attempted to secure an unlawful release of future race discrimination claims—claims Defendant was trying to force Dr. Nwobu to waive though they had not yet accrued.

42.     By expecting her to forbear from suit on claims that had not yet accrued in the future, Defendant attempted to compel Dr. Nwobu to waive her prospective rights under Section 1981 as a condition of employment.

43.     CHOA had actual and constructive knowledge of the U.S. Supreme Court's decision in *Alexander v. Gardner-Denver Co*., 415 U.S. 36, 51 (1974) that, "there can be no prospective waiver of an employee's rights under Title VII," the rationale of which applies with equal force to analogous claims under Section 1981.

44.     CHOA refused to rehire Dr. Nwobu because she refused to waive prospective Section 1981 claims arising between November 1, 2019 and March 1, 2020.

45.     Dr. Nwobu's refusal to execute the second release was a reason cited for CHOA's decision not to rehire Dr. Nwobu in its Position Statement to the U.S. Equal Employment Opportunity Commission.  Enforcing that requirement as if it were agreed upon on November 1, 2019, without additional consideration, violates Title VII.

46.     The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against her in violation of 42 U.S.C. § 1981.

47.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

48.     CHOA undertook its conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages.

## COUNT II
## Retaliation in violation of Title VII

49.    Plaintiff hereby incorporates each and every preceding paragraph of the Complaint.

50.    Plaintiff engaged in protected activity by opposing discrimination against her on the basis of race, sex and her pregnancy to Defendant as outlined above.

51.    Defendant retaliated against Plaintiff by refusing to rehire her after she previously asserted race, sex and pregnancy discrimination claims, and because she refused to release future unknown, unaccrued Title VII claims as part of a settlement agreement.

52.    Defendant's actions, in taking adverse employment actions against Plaintiff for engaging in statutorily protected activity by complaining of, and opposing, race, sex and pregnancy discrimination constitute unlawful intentional retaliation in violation of Title VII.

53.    Defendants willfully and wantonly disregarded Plaintiff's rights, failed to take protective and corrective action on Plaintiff's behalf, and retaliated against Plaintiff in bad faith.

54.    As a result of Defendant's unlawful actions, Plaintiff has suffered stress, inconvenience, humiliation, and other indignities.

55.     As a result of Defendants' violations of Title VII, Plaintiff is entitled to recover any lost economic benefits of her employment, compensatory and punitive damages, and reasonable attorneys' fees and costs, as well as equitable and injunctive relief.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.     That a jury trial be had on all issues so triable;

B.     Back pay and benefits;

C.     Front pay and benefits;

D.     Compensatory damages;

E.     Punitive damages;

F.     Declaratory relief pursuant to *Alexander v. Gardner-Denver Co*., 415 U.S. 36, 51 (1974) that, "there can be no prospective waiver of an employee's rights under Title VII."

G.     Injunctive relief to prevent CHOA from engaging in such retaliatory conduct in the future;

H.     Costs incurred in bringing this action, including Plaintiff's attorneys' fees;

I.     Interest on all monetary awards; and

J.      Such other and further relief as the court deems appropriate under the circumstances of this case.

Respectfully submitted this 24th day of February, 2022.

Respectfully submitted,

**BUCKLEY BEAL LLP**

*/s/ Edward D. Buckley*
Edward D. Buckley
GA Bar No. 092750
edbuckley@buckleybeal.com
Anita K. Balasubramanian
GA Bar No. 372029
abala@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101